# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Maximino VARGAS<br>(xx/xx/1974)<br><br>_Defendant(s)_ | )<br>)<br>) Case No. 19-MJ-1264<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2/15/19 through 6/17/19__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 and 860(a) | Attempted possession of a controlled substance with intent to distribute within 1,000 feet of a public or private school |
| Title 21, United States Code, Section 841(a)(1) | Distribution of and possession with intent to distribute a controlled substance |
| Title 18, United States Code, Section 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Task Force Officer John Schott, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 6/17/19

_Judge's signature_

City and state: __Milwaukee, Wisconsin__    Honorable William E. Duffin, Magistrate Judge
_Printed name and title_

# AFFIDAVIT

I, Task Force Officer John Schott, being first duly sworn, hereby depose and state as follows:

1. I have been employed as a Police Officer with the Milwaukee Police Department since March 31, 2002. I am currently assigned to the North Central High Intensity Drug Trafficking Area ("HIDTA") Office where I have served as a Drug Enforcement Administration ("DEA") Task Force Officer since March 15, 2018. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

   c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

1

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

3. The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against Maximino VARGAS (DOB: 09-25-74) for violations of the laws of the United States, that is, attempting to possess and possessing with intent to distribute a mixture or substance containing a detectable amount of cocaine and more than 5 grams of marijuana within 1,000 feet of the real property comprising Mitchell Integrated Arts School, a public elementary and middle school, in violation of Title 21, United States Code, Sections 846 and 860(a);

2

distributing a controlled substance, namely a mixture or substance containing a detectable amount of cocaine, 5 grams or more of methamphetamine, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(viii), and 841(b)(1)(C); possessed with intent to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii); and possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

## PROBABLE CAUSE

4. In February 2019, investigators[1] from the North Central HIDTA Interdiction/ DEA Drug Task Force Group 68 (HIDTA officers) commenced an investigation into Maximino VARGAS, a suspected methamphetamine, cocaine and marijuana distributor in the Milwaukee area. The investigation involved the controlled purchase of controlled substances from VARGAS and the execution of search warrants at VARGAS's place of business and residence.

5. In February 2019, Customs and Border Protection (CBP) inspected a parcel originating from Mexico City, Mexico and addressed to 1745 S. Muskego Avenue, Milwaukee, Wisconsin. Upon opening the parcel, CBP found 10 leather seat covers that together contained approximately 23 kilograms of marijuana. Based on this information, HIDTA officers obtained a state anticipatory warrant to search 1745 S. Muskego Avenue, Milwaukee, Wisconsin (the premises), which is also the address for MKE -Milwaukee Cuts Barbershop. On February 15, 2019, an undercover officer (UC), posing as private parcel carrier, delivered the parcel to the premises. VARGAS, who was inside the premises, directed the UC to leave the parcel on the

---

[1] Throughout this affidavit, reference will be made to investigators or law-enforcement officers. Investigators or law-enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

3

north side of the premises. Soon after the UC left the parcel at the premises, HIDTA officers executed the search warrant at the premises. During the search, VARGAS informed the officers that his wife owned the barbershop. VARGAS explained that he lived with his spouse and son in a residence connected to the barbershop, which was identified as 1743 S. Muskego Avenue, Milwaukee, Wisconsin. VARGAS also informed the officers that his son had firearms, which were located in the third floor of the premises.

6. During a search of the premises, the officers found the parcel that the UC had delivered and a loaded Sig Sauer P938 9mm semi-automatic pistol, serial no. 52B328628, inside the cash register. VARGAS also consented to a search of 1743 S. Muskego Avenue, Milwaukee, Wisconsin (the residence). During a search of the residence, officers found a clear plastic bag filled with a green, leafy substance in a china cabinet in the dining room. The green, leafy substance field-tested positive for marijuana and weighed 12.21 grams. Also in the dining room, officers found a digital scale, a ledger, and approximately $48,000.00 in U.S. currency. VARGAS initially said the money belonged to his wife, but subsequently explained the money was from his roofing business. In the upper portion of the residence, the officers found a S&W, 9mm, model M&P, serial no. NBD5972, semi-automatic pistol, and an AR-15 rifle, Schryver, model S-15, serial no. S00196.

7. Following the search of the premises and the residence, the HIDTA officers obtained a recorded, post-*Miranda* statement from VARGAS. VARGAS discussed the suspicious parcel delivered by the UC. He admitted the parcel contained marijuana. VARGAS said a Mexican male named "Juan" or "Flaco," who lives in Rockford, Illinois, was responsible for sending the drug-laden parcel to the premises. He said "Juan"/"Flaco" drives a white Acura SUV bearing Illinois license plates. VARGAS said "Juan"/"Flaco" had ties to people in California and

4

probably Mexico. He said "Alonzo" was supposed to pick up the drug-laden parcel. VARGAS said "Juan"/"Flaco" had personally delivered marijuana to the premises on previous occasions. On those occasions, "Juan"/"Flaco" brought the marijuana in either a garbage bag or concealed in leather seat cushions. VARGAS said "Juan"/"Flaco" supplies whatever amount is needed – between 50 and 100 pounds. VARGAS admitted to selling some of the marijuana as well as acting as a middleman for between 20 and 40 pounds in exchange for $1,000. He said "Juan"/"Flaco" could also supply him cocaine. VARGAS explained the firearm found in the cash register was for "shop protection."

8.  On March 27, 2019, at the request of HIDTA officers, a confidential informant (CI) arranged the purchase of two ounces of cocaine from VARGAS in exchange for $2,000. VARGAS agreed to conduct the drug transaction in the alley behind 1743/1745 S. Muskego Avenue, which the CI knew to be VARGAS's residence and barbershop. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $2,000 to purchase the cocaine. The CI was provided with $2,000.00 in HIDTA buy funds, as well as audio/ video devices to record the transaction. The officers continuously monitored the CI during the controlled purchase. On March 27, 2019, at about 9:10 a.m., the CI parked at the rear of VARGAS's barbershop/residence. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI two ounces of suspected cocaine in exchange for $2,000. During the transaction, the CI told VARGAS that the CI needed a rifle. VARGAS replied, "I got an AR (i.e., an AR-15), but that's in my daughter-in-laws, it's in her name. I got that fucker way up there (VARGAS pointed to the upper portion of his residence). When they (i.e., HIDTA officers) came in, they found all her guns up there, but they can't do shit

5

I said. They left her guns right on the bed bro, when I went up there all her pistols were right on the bed bro. She got concealed carry, it's the whole house, but it's her own door to go up there." Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected cocaine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers conducted a field test on the suspected contraband, which yielded positive results for cocaine. The cocaine weighed 55.6 grams.

9. On April 2, 2019, at the request of HIDTA officers, the CI again arranged the purchase of two ounces of cocaine from VARGAS in exchange for $2,000. VARGAS agreed to conduct the drug transaction in the alley behind 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $2,000 to purchase the cocaine. The officers continuously monitored the CI during the controlled purchase. On April 2, 2019, at about 8:54 a.m., the CI parked at the rear of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI two ounces of suspected cocaine in exchange for $2,000. Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected cocaine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers conducted a field test on the suspected contraband, which yielded positive results for cocaine. The cocaine weighed 53.71 grams.

10. On April 4, 2019, at the request of HIDTA officers, the CI arranged the purchase of an ounce of methamphetamine from VARGAS in exchange for $500. VARGAS agreed to

6

conduct the drug transaction in front of the premises located at 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $500 to purchase the methamphetamine. The officers continuously monitored the CI during the controlled purchase. On April 4, 2019, at about 2:19 p.m., the CI parked in front of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited a white conversion van also parked in front of 1743/1745 S. Muskego Avenue and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI an ounce of suspected methamphetamine in exchange for $500. Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected methamphetamine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers submitted the suspected methamphetamine to the North Central DEA lab for analysis. The lab determined the substance was 99% pure methamphetamine and weighed 27.9 grams (net).

11. On April 5, 2019, at the request of HIDTA officers, the CI arranged the purchase of an ounce of methamphetamine from VARGAS in exchange for $500. VARGAS agreed to conduct the drug transaction in in the alley behind 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $500 to purchase the methamphetamine. The officers continuously monitored the CI during the controlled purchase. On April 5, 2019, at about 9:06 a.m., the CI parked at the rear of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI an ounce of suspected

methamphetamine in exchange for $500. Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected methamphetamine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers submitted the suspected methamphetamine to the North Central DEA lab for analysis. The lab determined the substance was 100% pure methamphetamine and weighed 27.7 grams (net).

12. On April 11, 2019, at the request of HIDTA officers, the CI arranged the purchase of six (6) ounces of methamphetamine from VARGAS in exchange for $2,500. VARGAS agreed to conduct the drug transaction in in the alley behind 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $2,500 to purchase the methamphetamine. The officers continuously monitored the CI during the controlled purchase. On April 11, 2019, at about 12:13 p.m., the CI parked at the rear of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI six (6) ounces of suspected methamphetamine in exchange for $2,500. Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected methamphetamine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers submitted the suspected methamphetamine to the North Central DEA lab for analysis. The lab determined the substance was 100% pure methamphetamine and weighed 167.7 grams (net).

13. On May 2, 2019, at the request of HIDTA officers, the CI arranged the purchase of two (2) ounces of methamphetamine from VARGAS in exchange for $1,000. VARGAS agreed

to conduct the drug transaction in in the alley behind 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $1,000 to purchase the methamphetamine. The officers continuously monitored the CI during the controlled purchase. On May 2, 2019, at about 9:03 a.m., the CI parked at the rear of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI two (2) ounces of suspected methamphetamine in exchange for $1,000. Following the transaction, VARGAS returned to the premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected methamphetamine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers submitted the suspected methamphetamine to the North Central DEA lab for analysis. The lab determined the substance was 100% pure methamphetamine and weighed 55.9 grams (net).

14. On May 29, 2019, at the request of HIDTA officers, the CI arranged the purchase of two (2) ounces of methamphetamine from VARGAS in exchange for $1,000. VARGAS agreed to conduct the drug transaction in in the alley behind 1743/1745 S. Muskego Avenue. Prior to the controlled purchase, officers searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers also equipped the CI with audio/video recording devices and gave the CI $1000 to purchase the methamphetamine. The officers continuously monitored the CI during the controlled purchase. On May 29th, 2019, at about 9:58 a.m., the CI parked at the rear of 1743/1745 S. Muskego Avenue. Soon thereafter, VARGAS exited the premises and entered the front, passenger side of the CI's vehicle. VARGAS gave the CI two (2) ounces of suspected methamphetamine in exchange for $1,000. Following the transaction, VARGAS returned to the

premises. The CI then drove to a pre-determined meet location where the CI gave the officers the suspected methamphetamine. The officers again searched the CI for drugs, weapons, or currency. The search yielded negative results. The officers conducted a field test on the suspected contraband, which yielded positive results for methamphetamine. The methamphetamine weighed 50.43 grams.

15. On June 17, 2019, at approximately 8:49 a.m., HIDTA officers executed a search warrant at 1743 and 1745 S. Muskego Avenue, Milwaukee, Wisconsin (the premises). VARGAS was present at the premises. A search of a second floor, makeshift pantry/closet in 1743 S. Muskego Avenue yielded the following items: four (4) packages containing 1.45 kilograms (3.2 pounds) of methamphetamine (field-testing positive for methamphetamine), 205.24 grams of cocaine (field-testing positive for cocaine), 43.47 grams of heroin (field-testing positive for heroin), 1.33 grams of methamphetamine (field-testing positive for methamphetamine), and 6.6 grams of cocaine (field-testing positive for cocaine). In the northwest bedroom area of the second floor of 1743 S. Muskego Avenue, officers found 13.28 grams of marijuana (field-testing positive for marijuana) on a window sill and a black, Glock, .380 caliber semi-automatic handgun on the top shelf of a closet. On the third floor of 1743 S. Muskego Avenue, officer found two separate quantities of marijuana (i.e., 96.01 grams and 4.24 grams – field-testing positive for marijuana), and a black, semi-automatic Schryver brand, 5.56 caliber rifle located on a window sill in the east bedroom. During a search of VARGAS's bedroom, officers found a black Smith & Wesson, 9mm handgun inside a dresser drawer and a large amount of U.S. currency. Officers also found multiple, digital gram scales throughout the premises.

16. On June 17, 2019, VARGAS provided a post-*Miranda* statement to the HIDTA officers. VARGAS admitted to possessing for distribution the four (4) packages of

methamphetamine discovered at his residence. VARGAS said he had about $12,500.00 in his bedroom, which were proceeds from selling marijuana. VARGAS said the cocaine found in his pantry/closet was for both personal use and distribution. VARGAS said the marijuana found on the third floor of his residence originally belonged to him, but was given to his step-son Mario. VARGAS also admitted to knowing about the firearm found in his bedroom dresser drawer and that he has touched the firearm in the past.

17. The premises located at 1743 and 1745 S. Muskego Avenue, Milwaukee, Wisconsin are within 1,000 feet of the real property comprising Mitchell Integrated Arts School, a public elementary and middle school. Specifically, the straight-line distance from the front door of the premises located at 1743 and 1745 S. Muskego Avenue to the Mitchell Integrated Arts School itself is 750.49 feet.

18. Based on the above information and facts, your Affiant submits there is probable cause to believe that Maximino VARGAS, in the Eastern District of Wisconsin, attempted to possess and possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine and more than 5 grams of marijuana within 1,000 feet of the real property comprising Mitchell Integrated Arts School, a public elementary and middle school, in violation of Title 21, United States Code, Sections 846 and 860(a); distributed a controlled substance, namely a mixture or substance containing a detectable amount of cocaine, 5 grams or more of methamphetamine, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(viii), and 841(b)(1)(C); possessed with intent to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii); and possessed a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).